## GLENN *v.* SOTHORON.

---

EQUITY PLEADING AND PRACTICE ; ASSIGNEE OF CHOSE IN ACTION, RIGHT OF, TO SUE IN EQUITY ; STATUTE OF LIMITATIONS ; PLENE ADMINISTRAVIT ; CREDITOR'S BILLS ; ADMINISTRATION ; DECEDENT'S ESTATES.

1. An amendment to an original bill in equity is considered as forming part of such original bill, and as a continuation thereof, and refers to the time of filing the original bill, and consequently constitutes but one record.
2. In this District the assignee of a chose in action, who has a complete and adequate remedy at law, cannot, merely because his interest is an equitable one, maintain a suit in equity to recover such demand ; but if the relief sought by the assignee can only be obtained through the remedial powers of a court of equity, a suit by him is maintainable.
3. In an action by the assignee of an insolvent corporation to recover a call made under direction of the court upon a stock-

holder for an unpaid balance due upon his stock, the statute of limitations begins to run from the date of the order of the court making the call or assessment.

4. In such an action against the administratrix of a deceased stockholder, *plene administravit* is a proper plea where the decedent's estate has been wholly and properly distributed under the statute governing the administration of such estates.

5. Such an action is not maintainable, under the Maryland act of 1785, against the administratrix and heir at law, to charge the real estate of the decedent, where the bill itself shows that the personal estate was, before distribution, more than sufficient to satisfy the complainant's claim.

6. But in such a case, where the administratrix is the widow and the heir at law the son of the decedent, the bill may be maintained against them as distributees of the personal estate. A creditor may in equity follow the assets of an intestate debtor into the hands of his distributees.

No. 17. Submitted April 3, 1894. Decided October 1, 1894.

Hearing of a suit in equity on the pleadings. The cause was set down for hearing on bill, pleas and demurrer at an equity term of the Supreme Court of the District of Columbia and was transferred to the General Term of that court to be heard there in the first instance. It was transferred to this court by operation of the act of Congress of February 9, 1893. *Remanded.*

The facts are sufficiently stated in the opinion.

*Mr. Henry Wise Garnett* and *Mr. Walter V. R. Berry* for the complainant.

*Mr. J. J. Waters* for the defendants.

Mr. Chief Justice Alvey delivered the opinion of the Court:

This is one of the many suits that have been brought within the last twenty years, in the courts of the country, State and Federal, to recover calls made upon stockholders in respect of stock held by them in the National Express and Transportation Company, a corporation created under the laws of the State of Virginia, and which, becoming insolvent, made an assignment in 1866, to trustees, for the

benefit of its creditors.   The present bill was filed by John Glenn, trustee, deriving his authority by appointment as substituted trustee under the deed of assignment, by virtue of a decree or order of the Chancery Court of the city of Richmond, Virginia, passed on the 14th of December, 1880, and the further order, passed in the same cause, on the 26th of March, 1886, by which last mentioned order an additional call or assessment of 50 per cent. of the stock of the corporation was authorized, and directed to be collected by said substituted trustee.   It is for the collection of this call or assessment of 50 per cent. on twenty shares of the stock that this suit is brought.   The history of the proceeding, and all the facts of the litigation in the State of Virginia, and the various decrees and orders made therein, are fully set forth in the cases of *Hawkins* v. *Glenn,* 131 U. S. 319, and *Glenn* v. *Liggett,* 135 U. S. 533; and again more fully in the recent case of *Glenn* v. *Marbury,* 145 U. S. 499.   We deem it unnecessary to repeat the facts in detail stated in those cases.

The original bill in this case was filed on the 22d of March, 1889, but it is not contained in the printed record before us.   The plaintiff obtained leave to amend, and on the 24th of April, 1890, filed an amended and supplemental bill, and the bill so amended is the bill that presents the case that we have to consider.   The facts alleged in the original and in the amended bill, however, are substantially the same, so far as they are material to the matters now presented for consideration.   The amendments to the original bill are considered as forming parts of such original bill, and as a continuation thereof, and refer to the time of filing the original bill, and consequently constitute but one record.   1 Danl. Ch. Pl. & Prac. 455.

The bill is filed against S. Louisa Sothoron, in her character of administratrix of George M. Sothoron, deceased, and also in her character of widow and distributee of the deceased; and against George M. Sothoron, in his character

of distributee of the personal estate of the deceased, and also in his character of heir at law of the deceased—George M. Sothoron, the defendant, being the only child and heir at law of his father. George M. Sothoron, the deceased, died intestate, in the District of Columbia, some time in the fall of the year 1870; and soon thereafter letters of administration on his personal estate were granted to his widow, one of the defendants in this suit.

Sothoron, the deceased, was, as it is alleged, an original subscriber for twenty shares of the capital stock of the National Express and Transportation Company, for which he received a certificate, paying 20 per cent. only on his subscription. And the object of the present suit is to recover the sum of one thousand dollars, with interest, that being the amount of the call or assessment of 50 per cent. on the original shares of stock of the Express Company, made by the order of court of March 26, 1886.

The amended and supplemental bill alleges that Sothoron, the deceased, left considerable personal estate, amounting, according to the inventory returned to the Supreme Court of the District by the administratrix, to the sum of $5,836.20; and that the deceased was, at the time of his death, seized and possessed of real estate of considerable value, which came to the possession of the defendants, and is held by them; though such real estate is in no manner described or identified in the bill. The bill then alleges that the administratrix of the deceased, in June, 1873, settled her account in court of the entire personal estate of the intestate which had come into her hands as administratrix; and, after paying certain debts and liabilities of the intestate, as shown by said account, " she distributed the balance of said intestate's personal estate, one-third to herself, as widow, and two-thirds to said defendant George M. Sothoron, as only child and next of kin of said deceased; the widow's share of said personal estate amounting to the sum of $909.95, and the share of George M. Sothoron, the other distributee, amounting to

the sum of $1,819.91, as shown by said account and distribution filed by the administratrix in said cause;" and which amounts the defendants, respectively, received and have enjoyed.

The bill sets out at great length, and with great particularity, the facts connected with the Express Company, its insolvent condition, its assignment to trustees for the benefit of creditors, the litigation occurring thereon in the courts of Virginia, and the several orders and decrees made in those courts, with a view to collecting in the assets of the Express Company, for the benefit of its creditors. It is quite unnecessary to recapitulate in this opinion the facts set forth in the bill. The bill prays for discovery of both real and personal estate, and for an account of the personal estate of the deceased; and for a decree rendering the personal estate liable in the hands of the distributees thereof, and if that be insufficient, that the real estate be charged in the hands of the heir at law.

The widow, Mrs. S. Louisa Sothoron, first entered a demurrer to the bill, and then she pleaded the statute of limitations to the claim of the plaintiff; and also *plene administravit* of the personal estate of the deceased. The defendant, George M. Sothoron, demurred to the bill, assigning special causes for the demurrer. The pleas of the defendant, the widow, was set down for hearing, and the plaintiff joined issue on the demurrer; and the cause was thereupon certified to the General Term of the Supreme Court of the District, to be there heard in the first instance. From thence the case has been transferred to this court, under the act of Congress of February 9, 1893.

It is a general rule of equity pleading that where a defendant demurs and pleads to the same matter, his plea overrules his demurrer; and so if he pleads and answers to the same matter, his answer overrules his plea. Beame's Eq. Pl. 39; *Chase's Case*, 1 Bland, 206, 217. A demurrer accepts the facts stated in the bill as true, for the purposes

of the demurrer, and answers those facts by averring that they constitute no ground for equitable relief. A plea to the bill generally admits or supposes all that is set forth in the bill to be true, but states *other facts* which produce an equity that displaces and overcomes that arising from the facts stated in the bill. A plea regularly pleaded demands the judgment of the court in the first instance whether the special matter set up by it does not debar the plaintiff from his right to the answer required by the bill. *Roche* v. *Morgell*, 2 Sch. & Lefr. 725, 727; *Bayley* v. *Adams*, 6 Ves. 594; *Salmon* v. *Clagett*, 3 Bland, 135. A plea may be good as to part of the bill, or as to some particular relief prayed, and bad as to other parts. Mitf. Pl., 295; Sto. Eq. Pl., Secs. 692, 693; 2 Danl. Ch. Pl. & Pr. 685, 686, and cases there cited.

1. The first question presented is that as to the right of the plaintiff as assignee and trustee to maintain this bill. That question is raised as special cause of the demurrer interposed by the defendant, George M. Sothoron, sued as distributee and heir at law.

The corporation, though insolvent, has not been dissolved; and no suit either at law or in equity could have been maintained against the original subscriber to the stock of the corporation by the assignee of the subscription—the money due thereon being a mere chose in action. The action could only have been maintained at law, according to the rules of the common law in force in this District, in the name of the assignor to the use of the assignee. For it is a well settled principle in the common law, in force in this District, that an assignee of a chose in action, in whom a complete and adequate remedy exists at law, cannot, merely because his interest is an equitable one, bring a suit in equity for the recovery of the demand. This is the established doctrine in the Supreme Court of the United States, as amply appears from the cases of *Hayward* v. *Andrews*, 106 U. S. 672, and *Glenn* v. *Marbury*, 145 U. S.

508. The last mentioned case arose in this District, and was one wherein the right of the present plaintiff, as trustee under the assignment made by the Express Company, to maintain an action at law was involved, and it was expressly held that he could not maintain the action, but that the action should have been brought in the name of the assignor for the use of the assignee.

But that principal does not apply here. In this case, the original debtor or subscriber to the stock is dead, and his personal estate has been administered and distribution thereof made to those apparently entitled to receive it. The object of this suit is to recover of the distributees the assets of the estate so received by them; and this can only be done by treating the money or other personal property received by them as being held upon an implied trust for the benefit of the unsatisfied creditors of the deceased debtor. The relief sought can only be obtained through the remedial powers of a court of equity, and in that tribunal the plaintiff, as equitable assignee, has full and complete power to sue and maintain the suit, in respect of his equitable right. This bill, moreover, seeks to charge the real estate of which the original debtor died seized, in the event of a deficiency of the personal assets; and this relief can only be had in a court of equity. There is no ground, therefore, for contending that the plaintiff had no right to institute this suit.

2. The next question is one raised on the pleas of the defendant, Mr. Sothoron, and that is, whether the statute of limitations, in force in this District, forms a bar to the right of recovery on the claim sued for; and it is clear that it does not. The statutory bar, applicable to demands like the present, is a period of three years from the accrual of the cause of action to the time of suit brought. Here the three years had not elapsed from the date of the order of court of March 26, 1886, making the call of the remaining 50 per cent. of the stock subscribed, to the time of filing the original bill in this case. The limitation under

the statute commenced to run only from the date of the order making the call or assessment upon the stock, and the suit was brought within the time limited. *Glenn* v. *Marbury*, 145 U. S. 506, 507; *Glenn* v. *Williams*, 60 Md. 122, 123. The plea of limitations must, therefore, be overruled.

3. The next question raised by the pleas of the defendant, Mrs. Sothoron, is, whether *plene administravit* is an answer to the demand sued for; and we think it is, so far as the administratrix is sought to be held liable in her character of administratrix, but only to that extent. The plea shows that due notice was given to creditors as required by the statute (Md. Act of 1798, Ch. 101, Subch. 8, Sec. 13), and it is admitted in the bill that the administratrix paid off all debts presented and proved as prescribed, and made distribution of the balance of the estate in her hands, in accordance with the direction of the statute. Subch. 8, Sec. 15, and Subch. 11, Secs. 1 and 2. By Section 15 of Subch. 8, it is expressly provided that " in case all the assets shall have been paid away, or *delivered, or distributed in the manner hereafter directed,* and a claim shall afterwards be exhibited, of which the executor or administrator hath not knowledge or notice, *he shall not be answerable for the same;* and if he be sued for any claim, and shall make it appear to the court in which suit is brought, that he hath so paid away, delivered or distributed, and the plaintiff cannot prove that the defendant had knowledge or notice as aforesaid before such payment, delivery or distribution, the court shall not proceed to give judgment, (although the amount of the claim against the deceased may be ascertained as hereinbefore directed,) until the plaintiff shall be able to show further assets coming into the defendant's hands, but if the plaintiff shall prove notice or knowledge of the said claim against the defendant, judgment may immediately be given for such sum as the plaintiff ought to have received at the dividend, and *fieri facias* may issue and have effect, and further judg-

ment may be given as hereinbefore directed on coming in of further assets."

In the bill the allegation is made that the total amount of the personal assets of the estate coming to the hands of the administratrix, after payment of debts, etc., was distributed in the proportions as prescribed by the statute, and that is shown by the account and distribution filed of record. This distribution was made in 1873; and there is no charge or pretense that the assets were misapplied, nor is there any attempt, in any manner whatever, to surcharge and falsify the accounts settled by the administratrix. She was not allowed by law to withhold distribution, the law prescribing a time within which the administration should be completed. There is no ground, therefore, for any further accounting by the administratrix; and consequently the bill should be dismissed, so far as it seeks to charge her in her capacity of administratrix of her husband's estate.

4. Then the question is raised as to the right of the plaintiff to charge the real estate of the deceased debtor that descended to his heir at law, in view of the allegations of the bill with respect to the amount and condition of the personal estate left by the intestate. This question is made as one of the special causes assigned for the demurrer interposed to the bill by the heir at law.

It is shown by the allegations of the bill that the amount of the personal estate distributed to the widow and next of kin was nearly three thousand dollars, and the amount of the claim here sued for is but one thousand dollars, with interest from the date of the call; and it is not shown that there is any other enforceable debt due from the estate of the deceased, to make it apparent that the personal estate is insufficient to pay debts. The personal estate of a deceased debtor is the primary fund for the payment of his debts. The real estate of the deceased debtor, under the statute, can only be resorted to for payment of debts where the personal estate is insufficient, and the deficiency of the personal

estate must be affirmatively shown before the real estate can be subject to decree for payment.

In the case of *Ingle* v. *Jones,* 9 Wall. 486, 495, a case which arose in this District, when speaking of the effect of the Maryland statute, in force here, regulating the manner of discharging the debts of a deceased, the Supreme Court of the United States said : " That law makes the proceeding against the administrator and the heir, *when the latter proceeding is necessary, entirely independent of each other.* The duties of the administrator are confined to the personal estate, and never extend beyond it. If that be *insufficient* to discharge the debts, and it be necessary to resort to the realty of the deceased for that purpose, a proceeding against the heir must be instituted. In that event, whatever has been done by the administrator is without effect, as to the property sought to be charged. A judgment against the administrator is not evidence against the heir. The demand must be proved in all respects as if there had been no prior proceeding to effect its collection, and the statute of limitations may be pleaded with the same effect as if there had been no prior recovery against the personal representative."

In the case of *Wyse* v. *Smith,* 4 Gill & John. 295, 302, it was held by the Court of Appeals of Maryland, "that if personal assets come to the hands of the executor or administrator, sufficient to pay all the debts of the deceased, the creditor must look to that fund for the payment of his debt, and if those assets are wasted, his remedy is on the official bond of the executor or administrator. The real estate of the debtor is *protected* unless the personal assets are insufficient, and to authorize the chancellor to pass a decree to sell the real estate to pay the debts of the deceased, the bill must allege an insufficiency of personal assets for that purpose, and must sustain that allegation by proof, or the admission of the opposite party—citing act of 1785, Ch. 72. We cannot therefore sustain this decree under the act of 1785, because the bill does not allege an insufficiency of personal

assets to pay the debts, and if alleged the complainants, by their own showing, disprove the allegation." And so in the case of *Griffith* v. *Frederick County Bank*, 6 G. & J. 424, it was held, that a creditor can only call upon a court of equity to decree the sale of the real estate of the deceased debtor, under the act of 1785, Ch. 72, *upon the ground of the insufficiency* of the personal estate to pay his debts. The jurisdiction of the court depends upon the condition in the statute declared; and the insufficiency of the personal estate ought to be alleged in the pleading, and established in proof.

In this case, it being shown by the allegations of the bill, that there was no deficiency of the personal estate to pay the debts of the deceased, including the debt sued for in this case, it follows that there is no case presented to justify a decree for a sale of the real estate of the intestate. It follows, therefore, that the bill ought to be dismissed, so far as it seeks to discharge the real estate of the deceased debtor, in the hands of his heir at law.

5. But there is an aspect in which the bill in this case may be sustained. It may be sustained against the widow, and the son as next of kin of the deceased, for and in respect of the personal estate distributed to them, in the final settlement of the personal estate of the deceased. These parties are not suable at law by the creditor. But, as said by Judge Story, such creditor has a clear right in equity, in such case, to follow the assets of the intestate into their hands, as a trust fund for the payment of his debts. Legatees and distributees are in equity treated as trustees for this purpose; for they are not entitled to anything except the surplus of the assets after all the debts are paid. 2 Sto. Eq. Juris., Sec. 1251; *Zollickoffer, Exr.*, v. *Seth, Admr.*, 44 Md., 359, 372, 373 where the cases upon this subject are collected, and the result of them stated.

The decree that may be obtained against the distributees will be simply *in personam*, for and in respect of the personal

estate received by them; and such decree will bind their real estate as any other decree obtained against them; but such decree will not be a specific charge upon the real estate of the original debtor, descended to the heir at law as such, and because it has so descended.

The cause will be remanded to the Supreme Court of the District, that proper orders may be passed and that the cause may be proceeded with, in accordance with this opinion.

*Cause remanded in accordance with the opinion.*